For third and final case 25-1469, Geneva Enterprises, LLC v. Chavez, Mr. Tucci. Good morning, Your Honor. May it please the Court, Robert Tucci on behalf of the Defendants Appellants in this matter. The Federal Arbitration Act has been on the books for over 100 years. The Supreme Court has interpreted that act to apply a federal policy favoring arbitration. And in the employment context, that has meant over the past couple of decades that arbitration agreements that are required as a term of employment be enforceable. And additionally, that several other restrictions on the ability of employees to gather together in class or collective arbitrations have been restricted as well. That is the posture that we find ourselves in in this matter. My clients pressed forward what's called a mass arbitration before the American Arbitration Association, the AAA. And what a mass arbitration is, it's an amalgamation of multiple individual arbitrations. Typically, these cases would be brought in a class setting. However, because of the Supreme Court's recent decisions in Stolt-Nielsen and Lamps Plus, that has required these arbitral forums to adopt policies favoring mass arbitrations to process them in an efficient manner. The plaintiffs in this case... So basically, you want to go to arbitration and you're saying that the other refusing to do so. That's correct, Your Honor. And specifically, the employer in this matter, Geneva, has refused to pay their initiation fees to even get the arbitration started. The court already ordered arbitration, did it? Your Honor, that's in dispute. Certainly, my clients do not believe that the district court ordered or compelled arbitration. What occurred in the district court was that the employers, Geneva, filed a motion for preliminary injunction to prohibit the mass arbitration from proceeding. That motion was denied. My clients simultaneously filed a motion to compel arbitration and to stay the district court action pending the completion of the claims in arbitration. The district court did not grant our motion to compel arbitration. Did the district court specifically deny your motion to compel? Well, Your Honor, it's not clear from the June 2024 order what the disposition was of the motion to compel arbitration, but at the hearing on the same on June 6, 2024, the district court did indicate that he would be denying the motion. He did also, of course, deny my client's motions for sanctions and indicated that the case would be stayed pending resolution of the claims in So, at that point, my clients went back to the AAA. What did the order say that's on appeal here? So, once my clients went back to arbitration after the June 2024 order was issued by Judge Hilton, we presented the order to the AAA, and after that, Geneva still refused to pay their portion What did the order say that's on appeal here? And so, the order in this, the March 2025 order, after our renewed motion to compel arbitration was filed, states that it appeared to the court that the matter was already referred to arbitration and the case stayed and that my clients provided no essentially good reason to lift. So, the district court didn't compel arbitration. It just acknowledged that arbitration was ongoing. Is that a way that you would put it? I think so, Your Honor. And more so, just to kind of put another step there, I think what the district court did was refuse to prohibit the arbitration for proceeding. So, he denied the motion for preliminary injunction, but he did not compel arbitration to proceed. He said arbitration is ongoing, you just said. The order says arbitration is ongoing. My apologies, Your Honor. The order does not say that the arbitration was ongoing. It's the June 2024 order. No, the order that you tried to appeal here. The March 2025 order, the one that's on appeal right now, states that it appeared to the court that the matter was already referred to arbitration. It appears to the court that the matter was referred to arbitration. That's correct, Your Honor. And is that an appealable order? The one you've got up here now, is there any jurisdiction in this court to review this thing? And to kind of sort through the Gordian knot of jurisdictional issues, certainly under section 16 of the FAA, we believe that the jurisdiction does lie under 16a, because the court denied our renewed motion to compel arbitration. Now, through our supplemental briefing that was ordered last week, this court's decision in PISCA really looked at two angles to the jurisdictional analysis, 16a, 16b. 16a, and the way that the court, you know, discussed that issue was orders favoring arbitration are generally not appealable. Orders not favoring arbitration generally are appealable. Of course, you have to dig into the details there, and this is such a case. There was also a tangential issue in terms of whether a order granting a motion to compel arbitration could be immediately appealable if the action was what's called an embedded action or a standalone action. That's, we didn't really address that in the briefing, but that's an interesting issue here, because the posture that we find ourselves in, Judge King, is that Geneva filed... That was addressed by Judge Hilton. It was, that was not addressed by Judge Hilton, and actually was not raised by Geneva either. Geneva raised no jurisdictional arguments in the district court. Now, whether this is an embedded action or a standalone action, I think is an alternative route to get to the subject matter jurisdiction for the district court here. Geneva filed this as an injunctive action under Section 4 of the FAA. If it's a standalone action, you're looking at whether the motion to compel arbitration was the sole thing that the district court was to act on. You're back to talk about jurisdiction in the district court. That's correct, Your Honor.  By jurisdiction in the court circuit. My apologies, Your Honor. There's a Gordian knot of jurisdictional issues. Jurisdiction from the 2025 order. Right. That's the one that you're appealing. Right. Appellate jurisdiction of that one before you can do anything. My apologies, I misspoke. This would relate to appellate jurisdiction. So, whether the issue, whether the case is an embedded case or a standalone case under Section 16 to essentially provide a right to appeal, that is, you know, look through the prism of what was the district court doing in the action? Was there other claims that were at issue? Was there another trial as there was in Pisgah, for example? There was a breach of contract trial. He said, I'm keeping the stay in place. And it appears that arbitration is ongoing. Correct? In that order. In the March 2025 order. That's the one that you're trying to appeal now. That's right, Your Honor. But you're trying to appeal his ruling that the stay stays in place. Stay in this proceedings in the district court. Right. And that arbitration is ongoing. It appears that arbitration is ongoing. That's the whole thing that the court ruled. Courts don't, there's a general rule, courts speak through their order. Should we agree with that, right? That's correct, Your Honor. That's the order. And so, you have to be able to have appellate jurisdiction of those things to be here. Otherwise, we don't have any jurisdiction. We're court-limited jurisdiction too. And that's kind of my point regarding Pisgah, Your Honor, is there certainly is appellate jurisdiction under two routes. First is Section 16A, the motion to compel arbitration was denied. The arbitration was not on. That doesn't say anything about the motion to compel arbitration being denied. It says, appears that arbitration is ongoing. You've read it to me. Your Honor. It appears arbitration is ongoing and the stay is left in place. And there would be no stay unless arbitration was ongoing. My apologies. The stay, imposing the stay is part and parcel of getting arbitration. That doesn't say at the end of JA 1411, the renewed motion to compel arbitration is denied. That's correct, Your Honor. And to your point, Judge King, the order does not say that the arbitration is ongoing. It states that. It appears. It appeared to the court that the matter was referred to arbitration. All right. It appears that it was referred to arbitration. That's correct. And the stay is left in place. And the stay was left in place. That's correct. And the stay would not be left in place unless there was arbitration. They, that was, they were part and parcel.  Well, and that's. You have a stay because you got arbitration. Well, certainly under section three, the stay was entered pursuant to section three. Now section four, that's what our application was under. We wanted an order compelling arbitration or at the very least directing the parties to arbitrate their claims consistent with the arbitration agreement. So, so assuming we do have appellate jurisdiction, what is it you want us to do? So your honor, first we would like the court to reverse the district court's order denying our motion or our renewed motion to compel arbitration and direct the district court to enter an order compelling arbitration consistent with the terms of the arbitration. How can the court compel, as I understand it, what the, what the other side is doing is just not paying the arbitration fee. So naturally the arbiter arbitration arbiters don't want to work for free. So how can we, or the district court, compel the other side to pay the fee? Well, that's straight out of the text of section four of the FAA, your honor. It states that the court can compel arbitration consistent with the terms of the arbitration agreement. The arbitration agreement. Are there any courts that have adopted your proposal that we can compel a party to pay arbitration fees? We are. This is a bit of a unique situation, certainly. Can you say yes or no? That's a no. That's a no. We weren't able to locate a case. So we'd be pounding a new furrow, so to speak. That's correct, your honor. We've agreed with you on that. That's correct, your honor. And certainly mass arbitrations are a new furrow as well. And so I think we're. The problem here, though, is that you, you want to arbitrate and you want to arbitrate pursuant to the AAA's arbitration rules. And that comes with both benefits and problems for you because the rules contemplate that a situation where the one party refuses to pay the arbitrator's fees, that's a decision for the arbitrator to decide. In this case, they provided a number of options. They said, you pay the fee if you want to move forward. You don't like that, obviously, but that's not an issue. It seems to me for the district court to be involved in just yet because they're the arbitrators have control over this precise issue. Your honor, the issue is not whether the arbitrator should resolve the fee dispute. The issue is, how do we get to an arbitrator? How do we actually. Following up on what you just said, the arbitrator told you how you can front the fee since the opposing side won't pay it. Well, your honor, there was no arbitrator appointed in this matter. Why did you front the fees? I thought that's exactly what happened. They said you could put the fees up, and if you prevail, you get your fees back. My clients did pay their fees. No, no, they didn't pay their fees. But to front the money. Well, and that was certainly an option presented. They didn't arbitrate. That was an option presented. And that's probably what Judge Hilton was talking about when he said it appears it's an arbitration. And that was an option presented to my clients, your honor. However, the AAA acknowledged in their declination letter that Geneva violated the terms of the AAA rules. If that was an option presented to appellant, why doesn't that foreclose your argument that we should just make the other side pay in order to go forward with arbitration? You have the ability to go forward with arbitration. Your honor, because the declination letter issued by the AAA states that the case was administratively closed due to Geneva's nonpayment. It stated, of course, that they would be willing to reopen the matter upon payment of Geneva of its initiation fees and then move on to the arbitrator selection process. What about upon payment by your client fronting the fees? Your honor, that's certainly an option, but that would be outside of the scope of what Geneva was required in this situation. And that would certainly be an unfair result for my clients who are employees. They did not draft this arbitration agreement. They were not the ones that chose AAA. That's an issue for the arbitrator, not for the district court. Once the district court sends us to arbitration. That's correct, your honor. And Geneva can absolutely raise that dispute before an arbitrator once one's appointed, but we're not able to get to that step yet because they have not satisfied us. But you are because you could front the fee. How much are the fees? Roughly $7,500, your honor. Okay, so appellant could front the $7,500 and get to arbitration, right? Well, that short, of course, but a lot more cost effectively than going through an entire appeal to the fourth circuit. It seems like, well, your honor, that's, that would be Geneva's responsibility under the rules, right? Now I understand that. And you, and, and then if you, you could get the money back later in assuming later in  But the issue is what would happen after that point? Geneva still can test the arbitration. They would not pay the arbitrator compensation. They wouldn't pay the administrative fees. I guess we would cross that bridge when we came to it, but we're not there. Well, I suppose the, the, the response would always be my clients could forward Geneva's share of their costs and, and, and arbitrator expenses. But that is simply not what the agreement contemplates. And I see I'm out of time, your honor. So if you have any further questions. You want to finish your thought about the answer to judge stackers question? Well, and that's simply it, your honor. It's, it's the, the rules adopt the fee schedule and the fee schedule shifts certain responsibility on different parties here. Geneva had a responsibility to pay its portion of the initiation fees. My clients already paid their portion of the initiation fees to require my clients to front and the full burden of the arbitration that is outside the scope of what the agreement requires. We're simply trying to get the agreement in force, according to the district court and have the district court do it. The district court stay interstate right now. Your honor, what we, what we're asking for is an order, simply an order compelling arbitration or referring the dispute, directing the parties to arbitrate their claims consistent with the terms of the arbitration agreement. What happens after that point? I think that's a bridge we can cross when we get there. But right now we don't have an order that says that that's all we're trying to get. All right. Thank you. Mr. Good morning and may it please the court. My name is Les Machado and I represent the Appalese in this matter. We're collectively referring to as Geneva. There are three independent reasons why the court cannot grant the former employees the relief they seek, which is an order requiring Geneva to pay the disputed fees. First, when the former employees removed this case from the Virginia circuit court to the Eastern district of Virginia, there was no subject matter jurisdiction. As such, the proper remedy is to remand the case to the district court with instructions to remand it to the circuit court. What's the basis for the lack of subject matter jurisdiction? So your honor, let's take a step back. The former employees filed 31 demands for arbitration. Geneva's belief was that the former employees had not complied with certain conditions precedent in order to proceed in arbitration. So Geneva filed a complaint in state court that was effectively seeking to stop the arbitration because they hadn't complied with the conditions precedent. That was the purpose of the complaint. That was the complaint that the former employees removed to federal court. But there's no federal court jurisdiction on the face of that complaint. There's nothing in there that would give the federal court federal question jurisdiction. You're talking about a different jurisdiction issue than I talked about with him. Correct. I was talking about appellate jurisdiction. You're saying even if there is appellate jurisdiction, there is no district court jurisdiction. And I'll be honest. I'm not sure which comes first, subject matter or appellate. We have to have jurisdiction first before we can get to your question of district court jurisdiction. Now, let me address the appellate jurisdiction argument first, your honor. The March 27 order under appeal here is not an appealable order. You say there's no appellate jurisdiction. That's correct. As the former employees concede, what we're looking at is a system that says if the order being challenged on appeal is pro arbitration, it's not an appealable order. If it's antithetical to arbitration, it's an appealable order. The order under appeal, the March 27 order was a pro arbitration order. At the base of the motion was a motion to compel arbitration. Judge Thacker just read the portion of the district court's ruling that effectively denied that motion. I think you have to look behind the title of the motion and the one sentence in the order to see what they were actually looking for. What the former employees wanted was an order requiring Geneva to pay the arbitration fees. It was a renewed motion to compel arbitration and require Geneva to pay the arbitration fees. We may get to that question about is that something a federal court can even order? The answer to that is no, as five other circuits have held. That's what I think Judge Hilton was denying. He was saying that I already ordered this case to arbitration. I already stayed the case. I'm maintaining the stay and effectively sending you back to the arbitration that I already ordered last year. He's by no means saying that this case is going to proceed in federal court. That's the kind of order that would be appealable is a case that's antithetical to arbitration that says, no, no, these claims are not subject to arbitration. We're going to proceed in the federal district court with these claims. Those are the types of claims that section 16 says. Those are the types of orders that section 16 says are appealable. But that's not what this order did. Judge Hilton in no way, shape or form thought this was the case he's or now Judge is a case that he's going to litigate. He maintained the stay and sent it back to arbitration. And that line that Judge Thacker read, I think, was really about the what they really want, what they're actually looking for, what this whole appeal is about. You say it's about what they want. I say it's about what the court did. I mean, any lawyer, at least when I was a lawyer, when you get a court order, I don't care about all this stuff up here. I flip right to the end. And what's the bottom line? What did the court do? And the bottom line here is the court denied the motion to compel arbitration. It certainly has that language in there, Your Honor. But I don't think you can divorce that sentence from the remaining portion of the order. And I don't think you can divorce it from what transpired previously. The remaining portion of the order does it simply appears to me to acknowledge that arbitration. It's already been referred to arbitration. That's exactly right, Judge Thacker. So if you take a step back to the original order that the court issued the prior year, that was after, again, our client had filed essentially a motion to stay the arbitration, to stop the arbitration, to enjoin the arbitration because of the former employee's failure to comply with these conditions precedent. The former employees filed a motion to compel arbitration. And what Judge Hilton held at that time after the oral argument was, I'm not going to stay the arbitrations. Go forth and arbitrate. And that's contained in his order from. That's contained from his order from 2024, which is a JA 1392. This action is stayed pending resolution of the party's claims and arbitration. That's what he's referring to in the March 2025 order. I've already stayed this case. I've already directed the parties to arbitration. You now think that we don't have an appellate jurisdiction. So where would that leave us? Where would that leave us? Nowhere. Where would it leave you all? I think it sends it back to the district court. You know, that's my view to start figuring out what happens next. You raise this issue of a lack of subject matter jurisdiction over the initial action, which I hadn't focused on before. Was that the Judge Hilton rule on that? It was not raised at the time of the removal, Your Honor. But of course, subject matter jurisdiction can be raised at any time. And this court has an independent obligation to assess whether there was subject matter jurisdiction, even if it was raised for the first time on appeal. So let me get now to that aspect, which is even if there was appellate jurisdiction, we don't think there was subject matter jurisdiction in the first place. Again, when the case was removed. Which one do we look at first? I'm going to, I'm not sure. Where the appellate court? Yeah, I don't, I don't know if, I don't know the answer to that. You don't know the answer? I think, I don't think. You're our lawyer, you're supposed to be telling us. I think either way. Where the appellate court, do we have appellate jurisdiction? No. Did the district court have jurisdiction over the case? No. So you say there's no jurisdiction any way you look at it? Correct. Okay, and if there is jurisdiction, what's the answer? If there's both subject matter jurisdiction in the first place, which we don't think there is, and I'm happy to talk through why we think that's the case. And if there's appellate jurisdiction over the March 2025 order, although again, that order was not antithetical to arbitration. It was a pro-arbitration order. Then we get to the merits. And the merits are. Sorry to derail you, but Judge King raises an interesting point with respect to the issue of what do we decide and in what order. If we were to decide that there was no appellate jurisdiction, I don't think we can say anything more, can we? I think that's probably the case, Your Honor. And then it goes back to the district court. Why would that probably be the case? Why wouldn't that absolutely be the case? I'm still struggling. We can't go giving advisory opinions. I'm still struggling. We have to have jurisdiction. I'm still struggling. If we don't have jurisdiction, there's a thing called dismissal. And that's lawyers, they go to the very bottom. And then we call the next case. We should have had another case here. If we were going to dismiss this, we could have called another case. I'm going back. We can't deal with this. I know there's a fair amount of first years in the room. I'm going back to first-year civ pro and I'm struggling. You say Judge Stringer's case now. Yeah, I'm struggling with whether subject matter jurisdiction is essential before you get to appellate jurisdiction or if appellate jurisdiction comes first before you can revisit subject matter jurisdiction. But to your question, Judge Diaz, if the court concludes there is no appellate jurisdiction, then I think that ends this appeal. It goes back to the district court. Presumably the parties can litigate there about whether the district court. So you've got a position now. Your position, primary position is there's no appellate jurisdiction. And that means a dismissal.  End of case.  If the court said they would, what is it the parties would litigate in the district court when the district court, the last word the district court said is, this is all in arbitration. Well, and you won't pay the arbitration. Not you personally. Your clients won't pay the arbitration fees so that so they're just in purgatory over here. Not at all, Your Honor. Let me let's let me address that first. So if this court found there's no appellate jurisdiction and went back to the district court, presumably the parties could then litigate in the district court about whether there's subject matter jurisdiction. So that would be an issue for the district court to then resolve. Assuming the district court found subject matter jurisdiction to get to the merits of this case, which is does a federal court have the authority to order parties to pay the arbitration fees in arbitration? The answer to that question is nope. As the Second Circuit is held, as the Fifth Circuit is held, as the Seventh Circuit is held, as the Ninth Circuit is held. And I will say I was very surprised when I read those cases. It seems that you're right, but it would seem to sort of blow a hole in a district court's order compelling arbitration. If one side can just dig in its heels and say, I don't care what the district court said, I'm not paying. And I understand the intuitive appeal of that, Your Honor. I think the challenge that the former employees have is that the statute works in a certain way. It provides a very limited and narrow role for the federal district court in the first instance. Under Section 4, you file a motion to compel arbitration if one of the sides is refusing to go to arbitration. The district court's role at that point is very circumscribed. Is there an enforceable arbitration agreement? Are the claims within the scope of that agreement? If the answer to those questions is yes, the district court's role ends until a final award is issued, and then it might be reviewed under FAA Section 9 or FAA Section 10. But if one party refuses to go to arbitration, refuses to pay the fees, there will not be a final award, will there? But time and time again, the problem is those issues, issues about disputes over fees are issues for the arbitrable body, not for the district court. And so when it goes to the arbitration and the arbitrable body has to resolve those issues, those are procedural issues for the arbitrable body. And here, that's what happened. It went to the arbitrable body. They had multiple opportunities. I know you've talked at some length about the invitation for them to pay the fees. But even beyond that, the AAA rules say you can ask us to waive the fees or delay the  You can appoint them. That was going to, that perhaps answers the question I was thinking about is whether, if appellants were indigent and could not afford to pay the fee, they could seek a waiver. The AAA's rules, and we cited them in the brief, certainly have, give the AAA a lot of discretion when it comes to fees. And it gives the parties, and here the AAA exercised that discretion. And it said Geneva pay the fees. And when Geneva didn't pay the fees, it said to the former employees, would you like to pay the fees? And if they had paid the fees, we wouldn't be standing here today. But they declined to pay the fees. That's their decision. So if they had paid the fees and your client still said, I'm not going to arbitration, then what? I think it would depend on what the arbitrable body did, Your Honor. Because again, what we can't have is district courts or federal appellate courts getting into the minutia of arbitrations. You could take almost anything that happens in an arbitration and come back to court and say they are refusing to arbitrate. Think of the example that the Second Circuit did in the Twitter case. They said, think of a discovery issue where the arbitrator says to one party, I'm ordering you to produce these documents. The party doesn't produce the documents. We can't have the other party running to court and saying they're refusing to participate in arbitration. They're neglecting the arbitration. Compel them to participate in the arbitration. Those are issues. Once the district court's role ends and it goes to the arbitration, everything that happens thereafter, fees, discovery, length of hearings, whether it's going to be in person, whether are for the arbitrable body to decide and not for the courts to micromanage or second guess. To Judge Thacker's question, though, and perhaps to what you're thinking about, Judge Diaz, it does not leave the former employees without a remedy. They could have, again, sought all those relief from the AAA. They could have paid the fees or they could have come back to the federal district court and said, Geneva has waived its right to participate in the arbitration. It is the arbitration, which was Geneva's idea, can no longer go forward and we should be allowed to proceed in federal court, which is what all these courts say. The Second Circuit, the Fifth Circuit, the Seventh Circuit, the Ninth Circuit, the former employees are not without relief, but what they want is what this court can't order. So you're saying that the trial court could reassume jurisdiction and go to trial? Or again, this is an odd case because there's actually not a complaint pending. The former employees never filed their complaint in the district court. The complaint or the case that was filed in the district court was essentially our motion to stay the arbitration. But yes, the former employees, I think, and again, that's what all these courts say, is it doesn't leave the person without relief if, for whatever reason, and sometimes it might be indigency. And that's certainly the case in some of these cases why the fees weren't paid. In other of these cases, there's no question it wasn't indigency. There is no question that Samsung had the ability to pay the fees in the Seventh Circuit and didn't pay it. There's no question that Twitter had the ability to pay the fees in the Second Circuit case and didn't pay it. And the courts nevertheless said, okay, but whatever the arbitrable body decided when it had this dispute, and what it decided apparently in those cases is the same thing it decided here, which is a failure to pay the fees by either party because both were given those opportunities, we're going to close these proceedings, doesn't leave the former employees without remedy. They can go to the court. They can say the arbitrable body is now close to us, and we want to proceed in the appropriate court, state court or federal court, and the case would proceed. We would have no argument at that point to say, no, no, no, these claims belong in arbitration. We wouldn't be making that argument because we would have essentially waived those arguments about the arbitration. Can I ask a question about mass arbitration and the process by which it works? I don't know that it informs this case, but I was just curious. I think you said this. Somebody said this in the case that part of the concern with mass arbitrations is the exorbitant fees that an employer might have to pay. $7,500 doesn't seem like all that exorbitant to me, but is that wrong? I think when you look at the cases across the landscape, Your Honor, what you find is cases where that certainly is a much more meaningful number that the employer is required to pay. Is it per case or just one? I believe it's per case, and I'm doing this from memory. I believe the Samsung case, which was in the Seventh Circuit, I believe it was $17 million is what Samsung was required to pay. I'm in the wrong line of work.  So I think, and again, whatever the reason for why the fees weren't paid frankly doesn't matter at the end of the day. What matters is can a federal court order the fees to be paid? And the answer to that is no. And in the absence of those fees being paid in a case where the federal... The fees here were about $7,500. Correct. And you're representing car dealers. Correct. For employees of the car dealers who want to, who are on the other side. Correct. Former employees. 31 former employees. 31 former employees. And 27 of them have arbitration agreements. You say seven of them or four of them don't even have our, haven't signed the agreements or something. Correct. But those aren't for us. That's, Judge Hilton held- Those questions aren't for us. Judge Hilton held that those threshold issues were for the arbitral body to decide about whether- That sounds like Judge Hilton was right on the money if those other five circuits were right that you said you had on your side. And again, every circuit to have considered this issue has held unequivocally that federal courts don't have the ability to second guess what an arbitrable body does when it comes to a fee dispute. Just like it doesn't have the ability to second guess what an arbitrable body does when it comes to any other procedural dispute or ruling. The arbitrable body that you're calling is an arbitrator. Or in this case, a case administrator because the arbitrator hadn't yet been appointed. Okay. And hadn't been appointed yet. Yes. But it would be once it's appointed, that's the arbitrator. Correct. Your colleague on the other side actually makes that distinction. He says there is no arbitrator. The arbitrator hasn't decided anything. And that's no different than any of the other cases, Your Honor. If you read the Wallach case in the Seventh Circuit, it also stopped at the case administration stage. No arbitrator had been appointed. Again, there was relief available to the former employees at that stage pursuant to the AAA rules. They could have asked for a variety of different things to try to get the case moving, not withstanding the payment of fees. Or they could have simply paid the fees. Or they could have gone back to Judge Hilton and said, they've waived their right to proceed in arbitration. We want to now proceed in this court or the circuit court or whatever the appropriate court would be. Those were all remedies that were available to them. But the one remedy they want is one that this court or no federal court can order, which is an order that Geneva pay the fees. Because that, again, is an issue for the arbitrable body to have decided and not for the courts to second guess. And so we briefed the subject matter jurisdiction argument in our brief. I'm not sure it makes sense for me to walk through that. In short order, the motion that we filed in the state court that was removed to the federal court did not on its face provide for federal court jurisdiction. The former employees say, well, a week after removal, we, the former employees, filed a motion to compel arbitration under Section 4. And when you file a motion to compel arbitration under Section 4, you can look through to the underlying complaint. And if that underlying complaint raises federal claims, then there's federal jurisdiction. But federal court jurisdictions fixed at the time of removal. And at the time of removal, there was no federal court jurisdiction on the face of the complaint. You can't say a week later, I'm filing a motion that will provide federal court the ability to look through and look to the underlying complaints. And even if you could, even if that late filed week later, Section 4 motion could be used to ground federal court jurisdiction. When you look to those underlying complaints, there are 31 separate complaints. One had a federal claim. The other 30 had purely state law. It was an FLSA claim under the Fair Labor Standards Act. The other 30 complaints had claims for breach of contract under the Virginia wage payment statute. And the former employee's argument is, well, you can use supplemental jurisdiction to bring those 30 complaints, state law complaints, attach them to the one complaint with a federal law claim. And voila, we have federal court jurisdiction. But that's not what the law says. It wasn't a class action. They weren't joined. There weren't intervention. It was 31 separate complaints, and only one of which had a federal claim in it. So even if you could, even if you could rely upon their late filed, one week after removal, Section 4 motion as a basis for federal court jurisdiction, and you look through that Section 4 motion, you could not use that to find federal court jurisdiction over all 31 complaints. Of course, if this court finds that there's no appellate jurisdiction, then that is an So for any one of three reasons, we would request, first, if the court finds there's no appellate jurisdiction, that the court dismiss the appeal. If the court finds there is appellate jurisdiction, that the court find that there was no subject matter jurisdiction in the first place and remand the case with instructions to remand it to the circuit court. And third, if the court gets to the merits of the appeal, that the court join every other appellate court to have reached this issue and conclude that it lacks the authority to for employees the relief they seek. Thank you. Thank you very much, Mr. Machado. Your Honor, just a few points on rebuttal here. With regards to the jurisdictional argument, I agree. I think the appellate jurisdiction issue has to be addressed first. But of course, we believe there is appellate jurisdiction whenever that in my opening argument. And then, of course, for the subject matter jurisdiction, the Supreme Court's decision provides a look through, as my colleague just on the other side just mentioned. There is an FLSA claim in the underlying dispute. Geneva filed this action under Section 4 of the FAA. Same section that provides for a petition to file arbitration. They cited the FLSA claim in their papers. That provides a subject matter jurisdiction for the district court. Now, with regards to the merits, the issue of who should pay the fees is really separate from what do we do from this posture. The motion to compel arbitration was never granted. That is what my clients want. We want an order compelling arbitration or directing the parties to arbitrate consistent with the terms of the arbitration agreement. That incorporates the AAA rules. Now, there was an arbitrator appointed. So the arbitrator never made a decision of who should pay what fees. Geneva can present that issue to the arbitrator at that point. The arbitral body, the case administrator that made the determination of that Geneva did violate the rules, said so in the declination letter. Can you explain how the four or five cases that your colleague on the other side, they all seem to go against you. And you need to explain why that shouldn't be the result here. Yes, Your Honor. We laid that out pretty well in our reply brief. But Walrick and Hogue, which are both Seventh Circuit decisions, and then Frazier, which is a Second Circuit decision. Those cases aren't controlling here. And they're actually materially different. They involve controlling because they're out of circuit. That's correct, Your Honor. They involve either, number one, an administrator who terminated and steered the parties to court, as was the case in Walrick. B, lacked proof of a present refusal to arbitrate. Or C, that there was a live arbitration where the court was asked to micromanage a fee allocation midstream where the arbitrator made a decision regarding the fees. So here, we haven't even gotten to step one. We haven't even gotten an arbitrator appointed. The AAA, as is distinguished from Walrick, did not say, okay, now you can go to court. They said, if Geneva will pay the fees, we will administer the case. But because they haven't done so, we're not only refusing to administer the case, we're also directing Geneva to remove our name from their arbitration agreements. That way, there's no confusion to the public, and they can't invoke our services in later cases. So right now, my clients are in a bit of a catch-22. What do we do from here? Pay the fees. Advance the fees. Front the fees. That would go outside the four corners of the arbitration agreement. We're simply asking the courts to enforce— Isn't it something, though, that you would then argue in arbitration? Correct, Your Honor. Yeah, if Geneva wants to raise that argument that my clients are the ones responsible for the fees, including the initiation fees and any other fees— No, what you just said is something you'd argue in arbitration. You front the fees, as it's been suggested that you do. And then if you think that having to pay that is outside the scope of the arbitration agreement, then you argue that to the arbitrator, and you get it back as part of your award. But that's not my client's burden, Your Honor. That's Geneva's burden to raise that dispute before the arbitrator. They're the ones saying we should not have to pay these fees. Fair enough. Pay the fees. Bring it to the arbitrator. We'll make the determination from there. The AAA said the same thing. We're not administering the case because you violated the rules. You didn't pay the initiation fees. Just because my clients could forward an advance on the fees doesn't mean that Geneva breached the arbitration agreement by refusing to follow the AAA fee schedule, as the case administrator noted. And actually, that's a good point, Your Honor. It's—think about the Congress— Do you agree this case in the district court has been stayed? I'm sorry, my apologies, Your Honor? Your case in the district court has been stayed. That's correct. But it's not— And the only reason in the world it was stayed is for arbitration. Well, Your Honor, it's a bit of a complicated dynamic. Is there any other reason on the record for the stay except that arbitration? It's an injunctive action. So the case was stayed. Is there any other reason on the record for the fact that it's been stayed? No, Your Honor. It was stayed for arbitration. And it appears, whatever the district court said in that order, that arbitration is ongoing. I don't believe the court said arbitration is ongoing. And I see my time's running out. If I may just have a brief moment.  I just want to draw the court's attention to the converse. Let's say my clients were to file arbitration demands in the AAA and refuse to pay their initiation fees, claim that it was Geneva's burden to do so. At that point, the AAA would do the same thing. They would refuse to administer the cases. My clients could then go to court and say, OK, well, the AAA, you know, Geneva has refused to pay our clients, my clients' portions of the fees. So we should be able to proceed in court. I mean, it's an absurd result. The FAA, as the Supreme Court has said, clearly favors arbitration. And we're asking this court to reverse the district court and direct the district court to enter in order. Compelling arbitration and the alternative, at least lift the stay so my clients can see their day in court. All right. Thank you, Mr. Tucci. I want to thank both lawyers for their arguments here this morning. We appreciate them. I must say that I was disappointed to hear that lawyers only care about the bottom line and don't read our opinions. But I guess you shouldn't be surprised. Hopefully, you'll read this one when it comes out. We'll come down and greet you. We'll take a short recess, come back, and start the Q&A when we come back. Adjourned.
judges: Albert Diaz, Robert B. King, Stephanie D. Thacker